**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| SEACO INSURANCE COMPANY a/s/o | : | |
| CORNER HOUSE ASSOCIATES, LLP, | : | CASE NO. 3:01 CV 197 (AHN) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| LIGHTOLIER, a division of GENLYTE | : | |
| THOMAS GROUP, LLC, | : | |
| | : | |
| Defendant. | : | MARCH 26, 2004 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION**
***IN LIMINE* TO EXCLUDE THE TESTIMONY OF THOMAS HAYNES**

The defendant, Lightolier, a division of Genlyte Thomas Group, LLC ("Lightolier"), by and through its attorneys, Tedford & Henry, LLP, hereby submits the following Memorandum of Law in Support of its Motion to Preclude the Testimony of Thomas Haynes in this matter, and states as follows.

### I.  FACTUAL BACKGROUND

This matter arises out of a fire which occurred on December 28, 1999, at 4 Main Street, Farmington, Connecticut. At that time, plaintiff Seaco Insurance Company ("Seaco") insured the owner of that real property, Corner House Associates, LLP. Following that fire, Seaco compensated its insured for losses sustained in the fire, and brought this subrogation action against the defendant through the filing of a Complaint on December 21, 2001. (See, Complaint, attached hereto as Exhibit A).

**ORAL ARGUMENT REQUESTED;**
**EVIDENTIARY HEARING REQUIRED.**

In said Complaint, the plaintiff alleges that a product manufactured and distributed by the defendant, namely, a light fixture, was the cause of the subject fire and, thus, the defendant is liable for the damages in this case. To support its theory that the defendant's light fixture was the cause of the fire, the plaintiff disclosed Thomas Haynes ("Haynes"), a fire cause and origin investigator, as its experts on October 17, 2002. (See, Disclosure of Experts, Exhibit B). In that disclosure, the plaintiff identified Haynes as an expert witness who would testify as to the defective condition of the subject light in question. That Disclosure further referred to Haynes' report of October 16, 2002, attached to Exhibit B, as the substance of Haynes' expected testimony at trial. Following that disclosure by plaintiff Seaco, defendant Lightolier conducted the deposition of Haynes on December 18, 2002, during which he testified concerning his report and the testing he conducted which provided the basis for his opinion testimony. Because neither that report nor Haynes' testimony provides a proper basis upon which this Court may conclude that the testing methodology employed by Haynes satisfies the requirements of the Federal Rules of Evidence or applicable caselaw with respect to the admissibility of expert opinions, the testimony of Haynes must be precluded in its entirety.

## II.   LEGAL AUTHORITY AND ANALYSIS

Because the proffered testimony of Thomas Haynes fails to satisfy any of the preliminary requirements for admissible expert testimony, the proposed testimony must be precluded at trial. As a preliminary matter, the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and the case of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 589 (1993), all bear on the admissibility of the proffered expert testimony. First, Rule 26(a)(2) of the Federal Rules of Civil Procedure requires parties to set forth the subject matter of the testimony of any proposed expert, the substance of that testimony, and the basis for the opinions to be offered. Second,

Federal Rule of Evidence 702 provides the preliminary standard for the admissibility of expert testimony:

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (2003).[1]  Finally, for more than ten years federal courts have relied upon the United States Supreme Court case of _Daubert_, supra, in defining their role with respect to the admissibility of expert testimony, a case in which the Court held that "the trial judge must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." _Daubert_, 509 U.S. at 589.  The _Daubert_ Court determined that the court acts as a "gatekeeper" to bar the introduction of conjecture by witnesses who are not qualified by knowledge and experience to render truly expert opinions on the matter at issue, and whose proffered testimony is not supported by "appropriate validation" and reliable scientific method. Id. at 590.  In the present matter, the plaintiff has failed to meet both the procedural and substantive requirements concerning expert witnesses and, therefore, Thomas Haynes must be precluded from testifying at trial.

---

[1]  Additionally, Rule 703 provides additional information as to the bases of testimony by experts:

> [t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.  If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.  Facts or data that are otherwise inadmissible shall not be disclosed to the jury by the proponent of the opinion or inference unless the court determines that their probative value in assisting the jury to evaluate the expert's opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703 (2003).

> A. <u>The failure of the plaintiff to disclose Thomas Haynes as an expert on the issue of causation precludes Haynes from testifying as to that subject, and the lack of an opinion from Haynes on that issue negates the viability of the plaintiff's case.</u>

The Disclosure of Experts submitted by the plaintiff in this action with respect to Thomas Haynes neither connects the alleged defect which Haynes concludes is present in the design of the subject fixture to the subject fire, nor does it in any way explain the basis of any such causation theory. As explained previously, Rule 26(a)(2) of the Federal Rules of Civil Procedure requires the following with respect to expert disclosures:

> [e]xcept as otherwise stipulated or directed by the court, this [expert] disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case . . . be accompanied by a written report prepared and signed by the witness. The report shall contain a <u>complete</u> statement of <u>all</u> opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness informing the opinions . . . .

Fed.R.Civ.Pro. 26(a)(2)(B)(2003)(emphasis added). As is evident from the attached Disclosure of Experts (<u>Exhibit B</u>), the plaintiff has intended for Haynes to "testify as to the defective condition of the light fixture in question." Neither the Disclosure nor Haynes' report (attached as <u>Exhibit B</u>) relate in any way the alleged defective condition with respect to the cause of this fire. The purpose of Rule 26(a)(2) with respect to the disclosure of experts is to provide opposing counsel with information upon which it can prepare its defense. In this case, Mr. Haynes concludes, based on his testing, that there is a defect in the light fixture "<u>only if light bulbs larger than the light bulb which he believes was in the fixture at the time of the fire</u>," (<u>See</u>, <u>Exhibit B</u>), are used in the fixture. Haynes testified at his deposition that the data which he compiled following "experiment 1", an experiment he performed twice and which represents his replication of the fixture at the time of the fire, resulted in insufficient temperatures to ignite any known combustible material. (<u>See</u>, Deposition of Thomas Hayes, Pages 9, 18, 22, 48, 59-61, attached as <u>Exhibit E</u>). Not surprisingly, there is no indication in the Disclosure that Haynes will

testify as to causation in this matter, presumably because his "data" clearly does not support an argument that the subject light fixture was the ignition source of this fire.  Regardless of that substantive point, the failure of the plaintiff to disclose Haynes as having an expert opinion on causation, and the inability of Haynes to provide such an opinion, renders his opinion on the issue of causation inadmissible on procedural grounds.

> B.  <u>Because Haynes' opinion in this matter is not the product of reliable principles and accepted methodology in the field of fire science and investigation, his testimony must be precluded.</u>

In developing his opinions as to the issue of product defect in this action, Haynes failed to utilize reliable principles and accepted methodology; accordingly, this Court, in its "gatekeeper" role, must preclude Haynes' testimony at trial.  As stated previously, a qualified individual may offer expert testimony if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."  Fed. R. Evid. 702 (2003).  In the present case, there is ample evidence to demonstrate that the proposed expert is not only unqualified to render his opinion, but also that none of the requirements of Rule 702 can be satisfied.

> *(1)   Qualification as an Expert:*

First, as to Haynes' qualifications as an expert, the fire investigatory prowess of Thomas Haynes came to the attention of the Connecticut Supreme Court in the case of <u>*Carroll v. Allstate Insurance Company*</u>, 262 Conn. 433 (2002)(<u>Exhibit C</u>, attached hereto).  In *Carroll*, Allstate Insurance Company retained Mr. Haynes to investigate the fire claim of its insured, Oswald Carroll.  After investigating the loss, Haynes determined that the fire was a result of arson, advised Allstate of that fact, and Carroll's claim for property damage was denied by Allstate.

Following that denial, Carroll brought suit against Allstate claiming, *inter alia*, breach of contract, and the jury rendered a verdict for the plaintiff.  On appeal, the Supreme Court's unanimous decision was written by Justice Vertefeuille,  wherein she concluded that "the jury could also have found that the defendant's fire investigator (Tom Haynes) was neither thorough nor neutral." Carroll, 262 Conn. at 125.  Justice Vertefeuille went on to opine that "the jury also could have inferred from Shedbegien's testimony that Haynes had a tendency to find arson as the cause of suspicious fires and to ignore facts counter to the conclusion of arson, so that the defendant (insurance company) would continue to employ Haynes frequently." Carroll, 262 Conn. at 125.  This Connecticut Supreme Court decision aptly demonstrates that Haynes is unqualified due to his lack of thoroughness in investigation; his inability to reach a neutral opinion; and his tendency to ignore key facts which run contrary to his client's stated position.  Accordingly, Thomas Haynes fails to meet the most preliminary of requirements under Rule 702 – that he be qualified.

Second, with regard to Haynes' qualifications as an expert, Mr. Haynes testified that the subject light was defective because it exceeded the standards set forth in Section 410-66 of the National Electric Code.  However, when asked if he was aware of the Underwriters Laboratory protocol for testing these light fixtures he stated that he was not aware of such a protocol.  (See, Haynes deposition testimony pages 19, 31 and 32 attached as Exhibit E).

The plaintiff's expert witness who purports to have expertise with respect to the testing of the subject light's compliance with the National Electric Code is not even aware of the exclusive standard that is approved for testing lighting with respect to the National Electric Code. UL1598, Standard for Safety for Luminaires.  His conclusions are based on a violation of the National Electric Code standards yet he does not use nor is he even aware of the only accepted

standard for testing compliance with the National Electric Code. Accordingly, Mr. Haynes is not qualified to testify about alleged deviations from the standards set by the National Electric Code.

>   *(2)   Sufficient Facts or Data, Reliable Principles and Methods, and Proper Application to the Facts of the Case:*

In addition to the preliminary requirement of qualification, Rule 702 requires that a triumvirate standard be met before expert opinions will be allowed, a standard which is not met in this case. Specifically, expert opinions must be based upon sufficient facts or data; the expert must have utilized reliable principles and methods; and those principles and methods must be properly applied to the facts of the case. Fed.R.Evid. 702 (2003). In the present matter, however, the proposed expert has failed to utilize such reliable principles and methods, and the principles and methods which he did utilize in forming his opinions have not been properly applied to this case. Those failures render the expert opinion meaningless.

More specifically, the basis of Haynes' opinion that the subject light fixture is defective is his conclusion that the light fails to meet the standard set forth in Article 410 of the National Electric Code. However, Haynes failed to perform his testing in accordance with nationally-accepted procedures. The foremost testing laboratory in the United States, Underwriters Laboratory, has established Underwriters Laboratories Standard UL1598, which is directly applicable to the type of testing applicable to the type of light fixture at issue in this case. That Standard sets forth in Sections 11, 12 and 16, the test protocols adopted by the National Electric Code Panel 18 Committee, which is responsible for Article 410 of the NEC, as the approved methodology for determining compliance with Article 410. (See, O'Boyle Affidavit, Exhibit D). Haynes' failure to adhere to those accepted standards negates the viability of his opinion.

Particularly, as evidenced in Exhibit D, Michael O'Boyle explains that the "experiments" performed by Haynes which form the basis of his opinion in this case materially and

substantively differed from the accepted testing protocol set forth in UL1598.  In fact, Mr. O'Boyle points out that Haynes' test data does not support a conclusion that the subject light fixture is in non-compliance with the National Electric Code.  Moreover, the subject light fixture has, in fact, been tested by Underwriters Laboratories, and has been certified as being in compliance with the standards of the National Electric Code Article 410.  (See, O'Boyle Affidavit, Exhibit D).  While purporting to render an opinion based on a national standard such as the National Electric Code (NEC), Haynes relied upon an *ad hoc* experiment, discussed hereinbelow, which he put together in an attempt to reconstruct the configuration of the subject light at the time of the fire.  Haynes did not use accepted test protocol to determine compliance with NEC standards.

Haynes' report also discusses the results of certain "experiments" that he conducted, but the report fails to make any connection between the experiment test results and this fire, and the "experiments" failed to result in any findings which support his theory of the case.  By way of example, Hayes testified at his deposition that his experiment "Number 1" is the experiment which he believes most closely approximates the actual installation of the subject fixture at the subject property at the time of the fire.  (See, Exhibit E, page 22). Hayes conducted this test twice and, on both occasions, the highest temperature produced by the light tested was 191ºF.

When Hayes was questioned as to whether he was aware of any combustible material which could be ignited at that temperature, Hayes replied "off the top of my head, I don't believe I know of any."  (See, Exhibit E, Pages 60-61).  Haynes further testified that, through his testing in this case, he attempted to determine whether the light fixture caused adjacent combustibles to reach temperatures greater than 90ºC (194ºF), a temperature which Hayes testified is a National Electric Code standard for recessed light fixtures.  (See, Exhibit E, Pages 60-61).  Hayes testified

that the subject light fixture, when configured as in his test "Number 1," does not produce temperatures in excess of the 90ºC standard, yet his ultimate conclusion was that the light is defectively designed. In addition, when questioned further at his deposition, Haynes testified that his testing of an exemplar light fixture similar to the one in question, in a configuration which Haynes believes was representative of the installation of the subject light at the time of the fire, resulted in the production of a temperature of only 191ºF.[2]

Moreover, when Hayes was asked to produce the photographs which he took of his test set-up, he stated that all of his photographs were lost by the company which developed them. (See, Exhibit E, Page 17). A review of his file demonstrated that he performed no calibration of his testing equipment, nor did he perform any control tests to verify the accuracy of his test results. Furthermore, without photographs there can be no independent verification that the thermocouples used by Haynes to measure temperature were properly attached to the objects that he was attempting to measure. These deficiencies are all in violation of standard accepted test practices and could greatly affect the data produced by his testimony. (See, Affidavit of John Machnicki, Exhibit F).

In sum, Haynes agrees that the maximum temperature output of the product at issue, installed in the configuration which existed in this case, is insufficient to ignite any known combustible building material. His only conclusion is that, in his opinion, the light was defectively designed because, again, according to his testing, it violates standards set by the National Electric Code. However, Haynes failed to utilize the standard test methodology endorsed by the NEC in his own testing, with that failure likely resulting in the flawed testing

---

[2] Haynes tested other configurations which were not similar to the configuration of the light at the fire scene, and concludes that if the size of the lamp inserted in the fixture is changed, the temperatures will be higher than that permitted by the National Electric Code. However, that testing has no bearing whatsoever on this matter as the testing bears no relationship to the subject configuration.

results which Haynes did receive. At this point, the defendant can only speculate as to how Mr. Haynes will connect his test results to the cause of this fire. Additionally, a key piece of test data, being photographs of the testing, have been lost, and the defendant is without recourse in reviewing that test data. The failure to retain key test data and information obviously is not accepted testing procedures and methodology.

Haynes makes no attempt to connect this conclusion with a theory of causation for this fire. Furthermore, and fatally, Haynes' "experiments" do not employ the testing method adopted by the National Electric Code. In fact, his testing in no way approximates the testing sanctioned by the National Electric Code in determining compliance with its standards and, therefore, it resulted in data which has no relationship to the standard to which he compares it, therefore his conclusions are mere speculation and conjecture. His testing methods are unreliable, and his testimony which is based on this data should be precluded.

(3)     Inability to Test Haynes' Theories, Peer Review, and Rate of Error:

In addition to the failures noted above, Haynes' testimony is inherently unreliable and, therefore, it must be precluded at trial. Rule 702 of the Federal Rules of Evidence allows an expert to testify in the form of an opinion but only if (2) the testimony is the product of reliable principles and methods. The addition of this section to Rule 702 was the direct result of the Supreme Court case of *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993) and its progeny. The *Daubert* decision set forth a non-exclusive check list for trial courts to use in assessing the reliability of scientific expert testimony. The specific non-exclusive factors set forth by the *Daubert* court are:

> (1) whether the expert's technique or theory can be or has been tested… that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to

>peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community.

See Daubert, 509 U.S. at 590.

As aptly demonstrated, Haynes' test methodology is sloppy, not thorough, and fails when measured against any of the above five factors. Haynes testified that he designed his test to replicate the installation of the subject light at the time of the fire, but then compared his test results to a standard set forth by the National Electric Code. However, he failed to test the subject lamp using the exclusive acceptable test methodology for determining compliance with the relevant section of the National Electric Code, and he testified that he wasn't even aware of such a standard methodology. (See, Exhibit E, pages 31 and 32). In essence, Mr. Haynes is comparing apples to oranges to arrive at his opinion which supports his insurance company client, a position which should bring to mind the Carroll decision.

The accepted method of testing Haynes' theory is to test the light fixture in accordance with the UL1598, the standard methodology for determining compliance with NEC Article 410. This light fixture is certified by Underwriters Laboratories, to be in compliance with NEC Article 410, following their testing of the subject light in accordance with the proper standard. (See, Affidavit of Michael O'Boyle, Exhibit D). Haynes' methodology has not been the subject of peer review because it does not conform to the standard by which the industry determines compliance with the National Electric Code for this type product. Id.

Based on the methodology used by Haynes, there is no known or potential rate of error nor can anyone determine a potential rate of error with respect to his data because Haynes' methodology is *ad hoc*, and he no longer has photographs which would document the methodology which he used to attach the thermocouples to the various components of his

experiment. The positioning and attachment of thermocouples is critical for accurate and reproducible data. (See, Affidavit of John Machnicki, Exhibit F). Furthermore, there is no indication in Haynes' file that he used control tests to determine the accuracy of his own data. For instance, Mr. Haynes did not place thermocouples on objects or in substances of known temperatures to verify that his equipment was properly working at the time of his experiment. The failure to do so creates unreliable data in that the potential rate of error can not be determined. His recording of temperatures could be inaccurate by 10º or 20º, or 30º but we will never know. (See, Affidavit of John Machnicki, Exhibit F).

     Mr. Haynes' technique with respect to the collection of his data for the purpose of comparing it to the National Electric Code standards is not generally accepted in the scientific community. In fact, the only accepted methodology for determining compliance with the relevant section of the National Electric Code is the use of the standard methodology for testing, UL1598, which methodology Haynes did not use. As is pointed out by Michael O'Boyle, formerly employed at Underwriters Laboratory as an electrical engineer with responsibilities for compliance testing of recessed light fixtures, Haynes' test methodology is not scientifically valid for the testing of products in accordance with standards set forth by the National Electric Code. (See, Affidavit of Michael O'Boyle, Exhibit D). In sum, Haynes' opinion cannot be tested, it cannot be peer-reviewed, and the rate of error cannot be examined, all because of the fact that the test methodology and data obtained fails to meet any accepted standard in the industry. Accordingly, Haynes' opinion must be precluded.

## IV.    CONCLUSION

The testimony of Haynes with respect to any opinion which he may have with regard to causation, as well as his testimony with respect to the use of his test data as a basis for his conclusion that the subject light is defective, must be excluded from this case. Not only did the plaintiff fail to disclose an opinion which Mr. Haynes may have with respect to how this fire started, but Haynes' methodology is unreliable, devoid of any supportable analysis, and violates the principles set forth in Federal Rule of Evidence 702 and principles espoused in *Daubert* and its progeny. For all of these and the foregoing reasons, the defendant's Motion to Preclude must be granted.

Dated: March 26, 2004                                          Respectfully submitted,


                                                By:    _____
                                                       Frederick B. Tedford (ct05335)
                                                       TEDFORD & HENRY, LLP
                                                       750 Main Street
                                                       Hartford, CT  06103
                                                       Phone (860) 293-1200
                                                       Fax (860) 293-0685
                                                       ftedford@tedfordhenry.com

                                                       Attorneys for the Defendant

## **CERTIFICATION**

  I hereby certify that a copy of the foregoing was served, via U.S. Mails, proper postage affixed, on this 26th day of March, 2004, to all counsel and *pro se* parties of record addressed to the following:

Robert W. Cassot, Esq.
Morrison, Mahoney & Miller, LLP
One Constitution Plaza, 10th Floor
Hartford, CT  06103

                   _____
                   Frederick B. Tedford