IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SEACO INSURANCE COMPANY a/s/o | : | |
| CORNER HOUSE ASSOCIATES, LLP | : | |
| | : | |
| Plaintiff | : | CASE NO. 3:01 CV 197 (AHN) |
| | : | |
| v. | : | |
| | : | |
| LIGHTOLIER, a division of GENLYTE | : | |
| THOMAS GROUP, LLC | : | |
| | : | |
| Defendant | : | MARCH    , 2004 |

## AFFIDAVIT OF MICHAEL S. O'BOYLE

The undersigned, Michael S. O'Boyle, being first sworn states as follows:

1. I am over the age of eighteen (18) and understand and believe in the obligation of an oath.

2. I am employed at the Manager of Codes, Standards and Laboratories at Lightolier, LLC.

3. I am responsible for ensuring that all recessed light fixtures are in compliance with applicable product safety standards and code requirements.

4. I am responsible for the testing of all recessed light fixtures to ensure their continued certification by Underwriters Laboratories, Inc.

5. I have been responsible for compliance with codes and standards at Lightolier since 1988.

6. During the years 1983 through 1988 I was an Engineering Assistant at Underwriters Laboratories Inc. wherein I tested recessed lighting products for compliance with National Electric Code standards.

7. I am thoroughly familiar with the National Electric Code as it applies to recessed lighting fixtures.

8. While employed at Underwriters Laboratories it was my responsibility to test recessed lighting fixtures utilizing the test protocol established by Underwriters Laboratories to determine compliance with the National Electric Code standards for maximum permitted temperatures generated by recessed lighting fixtures.

9. The Underwriters Laboratories testing protocol is the industry standard and is utilized by Underwriters Laboratories and other certified testing facilities for certification of compliance with the National Electric Code and is set forth in document entitled _____.

10. All recessed light fixtures must be certified using this testing protocol to document compliance with Section 410-68 of the National Electric Code which sets forth maximum temperatures to which combustible materials may be exposed adjacent to these fixtures.

11. The light fixture, which is the subject of this litigation has been in production for over twenty years and has been certified by Underwriters Laboratories as being in compliance with Section 410-68 of the National Electric Code.

12. I have reviewed the "experiments" conducted by Thomas Haynes wherein purports to determine if the subject light fixture exceeded the standards set forth in the National Electric Code Section 410-68.

13. Although Mr. Haynes purports to determine compliance with the National Electric Code Standards, his "experiments" do not even attempt to employ the proscribed testing protocols.

14. Mr. Haynes' "experiments" are not scientifically valid for determining compliance with National Electric Code Standards relating to the subject light fixture.

15. The "experiments" conducted by Mr. Haynes would not be recognized by Underwriters Laboratories or by the National Electric Code Committee responsible for setting the standards for temperatures of recessed light fixtures, of which I am a member and have been since _____.

16. As the current chairman of the National Electric Code 410 Committee, I can state that the requirement that combustible materials adjacent to recessed light fixtures not be subject to temperatures in excess of 90ºc (194ºF) was established to provide a large margin of safety to prevent the ignition of adjacent combustibles.

17. In reviewing the data produced by Mr. Haynes as a result of his "experiments", I know of no combustible materials that would ignite at the highest temperature of 311ºF recorded by Mr. Haynes in any of his "experiments".

18. Mr. Haynes contends that "experiment" number 1 most closely approximates his assumption as to the installation of the subject light fixture at the time of the fire. He performed "experiment" number1 twice on two separate dates with the same result. The highest temperature which he recorded at the location where Mr. Haynes believes that paperbacked fiber glass insulation came into contact with the subject light, was 191ºF.

19. Mr. Haynes admits, and I concur, that no known combustible material will ignite at that temperature.

_____
Michael S. O'Boyle
Date: _____

Subscribed and sworn to before me this _____ day of March, 2004.

                                                                                                   _____
                                                                                                   Notary Public
                                                                                                   My Commission Expires:_____