**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SEACO INSURANCE COMPANY a/s/o : | |
| CORNER HOUSE ASSOCIATES, LLP : | |
| : | |
| Plaintiff : | CASE NO. 3:01 CV 197 (AHN) |
| : | |
| v. : | |
| : | |
| LIGHTOLIER, a division of GENLYTE : | |
| THOMAS GROUP, LLC : | |
| : | |
| Defendant : | MARCH     , 2004 |

**AFFIDAVIT OF JOHN MACHNICKI**

The undersigned, John Machnicki, being first sworn states as follows:

1. I am over the age of eighteen (18) and understand and believe in the obligation of an oath.

2. I am the Director of the Travelers Engineering and Loss Prevention Laboratory.

3. I am a certified Fire and Explosion Investigator and I have been involved in investigating the origin and cause of fires for more than fifteen years.

4. In my role as a certified fire origin and cause investigator I am familiar with ignition temperatures for combustible materials.

5. I am also familiar with and use the "Basic Methodology" for fire investigation which is set forth in Chapter 2 of the National Fire Protection Agency document entitled, NFPA-921, Guide for Fire and Explosion Investigations.

6. The basic methodology as set forth in NFPA-921 employs a systematic approach, which is the scientific method, and which provides for the organizational and analytical process

desirable and necessary in a successful fire investigation. (NFPA-921 Chapter 2, Paragraph 2.1 and 2.2).

7. In determining the cause of a fire, you must consider the circumstances, conditions, or agencies that bring together a fuel, and ignition source, and an oxidizer to result in a fire. (NFPA-921 Chapter 16, Paragraph 1(a)).

8. The determination of the cause of a fire requires the identification of those circumstances and factors that are necessary for the fire to have occurred. Those circumstances and factors include the device or equipment involved in the ignition, the presence of a competent ignition course, the type and form of the material first ignited, and the circumstances or human actions that allowed the factors to come together to allow the fire to occur. (NFPA-921 Chapter 16, Paragraph 1(d)).

9. A competent ignition source must have sufficient temperature and energy and be in contact with the fuel long enough to raise it to its ignition temperature. (NFPA-921, Chapter 16, Paragraph 3).

10. I have reviewed the plaintiff's Disclosure of Expert Witness dated October 17, 2002 with respect to the disclosure of Thomas Haynes as an expert in this case.

11. Neither the disclosure nor the attached report discloses any opinions connecting the data generated from his "experiments" to the causation of the subject fire.

12. The highest temperature recorded in any of Mr. Haynes' "experiments" was 311ºF using a configuration which even Mr. Haynes admits is different from the way in which he believes the subject light fixture was configured at the time of the fire.

13. I am not aware of any combustible building materials, including the paper-backed fiberglass insulation which Mr. Haynes believes is the first fuel ignited during the subject fire, that will ignite at 311ºF. The self ignition temperature of paper is over 450ºF.

14. Mr. Haynes' "experiments" establish that if paper-backed fiberglass insulation were placed over the subject lamp in the configuration which Mr. Haynes believes the subject light fixture was in at the time of the fire, the subject light could not have caused the fire.

15. In my role as laboratory director, I am responsible for ensuring that the laboratory testing which we perform on a daily basis, employs proper test protocols and is in compliance with the scientific method.

16. The use of the proper test protocol for each experiment is critical, for if the wrong protocol is used the data is unreliable and cannot be used for its intended purpose.

17. The protocols used by Mr. Haynes during his "experiments" are not acceptable protocols to determine whether a recessed light fixture is in compliance with the National Electric Code heat requirements as set forth in NEC Article 410-65.

18. Underwriters Laboratories Standard 1598 sets forth the testing protocols for determining compliance with National Electric Code standards with respect to recessed light fixtures and those test protocols are significantly and materially different from the protocols employed by Mr. Haynes. As such, Haynes' data is not reliable for the purpose of determining compliance with NEC Article 410-65.

19. Mr. Haynes testified that he lost his photographs of the testing which he performed.

20. By failing to document through photographs the manner in which Mr. Haynes attached his thermocouples to the objects being tested, there can be no verification that the

attachment was proper. For instance, if the very tip of the thermocouple was not tightly attached to the object being measured, even the slightest gap would allow air to circulate between the thermal couple and the object to be tested and the result would be a reporting of false high temperatures.

21.     Mr. Haynes brought his entire file to his deposition, however, his file contained no documentation that he employed controls to verify the accuracy of his data.

22.     It is standard scientific protocol to use controls to verify the accuracy of the data collected.

23.     Mr. Haynes used no controls to determine that the temperature readings generated through his "experimentation" were accurate. As part of his protocol, Mr. Haynes should have placed several thermocouples in locations of known temperature to verify that his equipment was operating properly on the days of his testing.

24.     Mr. Haynes' file contained no documentation that he calibrated his equipment prior to testing.

25.     It is basic scientific testing protocol to document the calibration of electronic equipment such as thermocouples and the electronic equipment used to read data from thermocouples prior to using that equipment in a test.

26.     It appears that Mr. Haynes' "experimentation" was performed to support the opinions which he will attempt to offer and that his testing was not the result of independent or neutral research.

                                                                                         _____

John Machnicki
Date: _____

Subscribed and sworn to before me this _____ day of March, 2004.

                                                                    _____
                                                                    Notary Public
                                                                    My Commission Expires:_____