UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ATLANTIC MUTUAL INSURANCE CO.
a/s/o A.G. EDWARDS & SONS, INC.,

            Plaintiff

v.

LIGHTOLIER, a division of GENLYTE
THOMAS GROUP, L.L.C.

            Defendant      CASE NO. 3:01 CV 197 (AHN)

and

SEACO INSURANCE COMPANY a/s/o
CORNER HOUSE ASSOCIATES, LLP

            Plaintiff

v.

LIGHTOLIER, a division of GENLYTE
THOMAS GROUP, L.L.C.

            Defendant      APRIL 1, 2004

### PLAINTIFF'S OBJECTION TO DEFENDANT'S MOTION TO PRECLUDE EXPERT TESTIMONY OF THOMAS HAYNES

The Plaintiff respectfully objects to the Defendant's Motion To Preclude Testimony of Thomas Haynes on the grounds that each of the Defendant's arguments to preclude testimony from Mr. Haynes is without merit. The Defendant's Motion To Preclude seeks to Preclude Mr. Haynes' testimony on the grounds that: (1) Mr. Haynes was not adequately disclosed; (2) Mr. Haynes' opinions are not based on accepted methodology in fire science; (3) Mr. Haynes is not

1

MORRISON, MAHONEY & MILLER, LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

qualified to testify as an expert; and (4) Mr. Haynes' testing methodology is not reliable. As will be discussed more fully below, these arguments are not supported by any evidence in this case.

First, Mr. Haynes was adequately disclosed and the Defendant is fully aware of his opinions. The Plaintiff disclosed Mr. Haynes on October 17, 2002, and provided a copy of his report to the Defendant on that date. Defense counsel deposed Mr. Haynes on December 18, 2002. During his deposition, Mr. Haynes clearly testified that the defect in the light was sufficient to cause pyrolysis of the paper on the insulation adjacent to the fixture. (Haynes Depo. at 25-29.) Additionally, very nature of Mr. Haynes' opinion—that the fixture was defective—suggests that the defect in question was the cause of the fire. It is telling that the Defendant, in making this highly technical argument, does not suggest that it has been prejudiced by this alleged incomplete disclosure.

Second, to support the Defendant's claims that Mr. Haynes' testing is not based on accepted methodology, the Defendant offers an expert affidavit from an employee of Lightolier, Michael O'Boyle, who was not previously disclosed in any manner as an expert.

Third, the Defendant relies on dicta from Carroll v. Allstate Insurance Company, 262 Conn. 433 (2002) concerning what a jury "could" have inferred about Mr. Haynes, in a single case involving completely different circumstances. Although the Carroll Court never indicated it agreed that such an inference was correct, the Defendant seeks to offer this argument as a transparent effort to undermine Mr. Haynes' credibility rather than preclude him as an expert.

2

Finally, the Defendant incorrectly suggests that Mr. Haynes was required to use Underwriter's Laboratory testing protocols, when in fact Underwriter Laboratory standards are not even relevant to this matter.

In light of the foregoing, the Defendant's motion should be denied, and Mr. Haynes should be permitted to testify about those matters addressed in his report, deposition, and expert disclosure, including his opinion that the fixture in question could reach a temperature sufficient to cause pyrolysis in the paper backed insulation in the vicinity of the fixture itself.

### I. FACTUAL BACKGROUND

As set forth in the Defendant's Memorandum, this case arises out of a fire, which occurred on December 28, 1999, at 4 Main Street in Farmington, Connecticut. The Plaintiff insured the owner of the property located at 4 Main Street. Following the fire, the Plaintiff compensated its insured for its losses sustained in the fire, and brought this subrogation action against the Defendant by filing a Complaint on December 21, 2001 alleging, principally, that the product, a light fixture, manufactured and distributed by the Defendant was defective thereby causing the fire and damages in this case.

The Plaintiff's theory of liability in this case is straightforward: This origin of the fire is adjacent to the recessed light fixture that was admittedly manufactured by the Defendant. The Plaintiff will establish the origin of the fire through the testimony of Fire Marshal Vincent DiPietro. Fire Marshal DiPietro will also testify that there was no other possible source of ignition in the location of the light fixture other than the fixture itself. Therefore, the jury could

3

MORRISON, MAHONEY & MILLER, LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

reasonably conclude that the fixture was the cause of the fire if the Plaintiff can prove that the fixture was capable of reaching temperatures sufficient to cause pyrolysis.

In addition, the Plaintiff has disclosed Thomas Haynes, a fire cause expert, as its expert to testify as to the defective condition of the light. As the Defendant has been aware since his deposition of December 18, 2002, Mr. Haynes' testing is sufficient to establish that under certain circumstances, the light in question is sufficient to cause pyrolysis (Haynes Depo. at 25-29), and can also reach temperatures in excess of those permitted by the National Electric Code.

## II.   ARGUMENT

The Defendant's Motion to Preclude should be denied because: (1) Mr. Haynes' testimony meets the standard of Federal Rule of Civil Procedure 26(a)(2), Federal Rule of Evidence 702 and the principles enunciated by the United States Supreme Court in <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993); (2) the Defendant's Affidavits of Michael O'Boyle and John Machnicki contain undisclosed opinions and are inadmissible; (3) the Defendant has not offered sufficient evidence to rebut the qualifications or methodology used by Mr. Haynes in order to prelude his testimony at trial.

### A.   **Mr. Haynes Experiments Establish a Reasonable Inference that the Subject Fixture was the Cause of the Fire**

In his experiments, Mr. Haynes was able to achieve temperatures in excess of 278° F within a short period of time, using a light bulb that was appropriate for the fixture in question. (<u>See</u> Experiment No. 2 of Haynes report). The only difference between Experiment No. 1 and experiment No. 2 was the type of bulb used. In experiment No. 2, the 65 watt incandescent bulb

4

was replaced with an "ordinary" 60 watt bulb. As a result of this change (to a smaller bulb), the temperature of surrounding combustible materials reached 278°F within only two hours. Additionally, as indicated in his report, in four of his nine experiments, the material surrounding the light fixture was in excess of the standards set forth in Section 410-65(a) of the National Electric Code. (See Haynes Report, Conclusions.)

As for the his opinions concerning the ability of this light fixture to cause the subject fire, Mr. Haynes testified in his deposition of December 18, 2002 that in his opinion, pyrolysis can occur at 250°F. (T. Haynes Depo. at 25-29, attached as Exhibit A.) As Mr. Haynes indicated in his deposition, scientific literature has established pyrolysis changes the composition of wood so that the ignition point of the pyrolyzed wood is significantly lower than that of wood. (Exhibit A, pg. 26; see also, "Pyrophoric Carbon" and Long Term, Low Temperature Ignition of Wood, The Ignition Handbook, Fire Science Publishers/Society of Fire Protection Engineers, 2003, Vytenis Babrasukus, Ph.D., attached as Exhibit B, which indicates that ignition of wood exposed to heat for longer periods of time can ignite with temperatures as low as 170°F.) As the Defendant's own expert James MacDonald has pointed out, pyrolysis is an accepted phenomenon in which wood changes its chemical makeup. (James MacDonald Depo. at 109-112, attached as Exhibit C.) According to Mr. MacDonald, pyrolysis can occur at temperatures as low as 212°F.

Mr. Haynes has been disclosed as an expert who will provide testimony about the defective condition of the fixture in question. As the Defendant has known since December 18, 2002, Mr. Haynes' opinion is that the fixture in question is defective in that it can, when installed in a foreseeable manner, reach temperatures sufficient to cause pyrolysis of surrounding

5

materials. Mr. Haynes will testify that the temperatures generated by the subject fixture was sufficient to cause pyrolysis and to ignite the paper back insulation above the light. As such, his testimony is sufficient to permit jury consideration of the issues of liability and causation.

### B. Affidavit of Michael O'Boyle is Inadmissible Expert Opinion

In a last minute[1] effort to discredit Mr. Haynes, the Defendant offers the affidavit of Michael O'Boyle, who offers his "expert" opinions concerning the applicability of the Underwriter's Laboratories ("UL") standards and the National Electric Code ("NEC"), as well as the protocols used by Mr. Haynes's in conducting his experiments. However, the Defendant fails to mention in its motion that it never identified Mr. O'Boyle as an expert witness in this case. At no point prior to the filing of its motion has the Defendant indicated an intention to call Mr. O'Boyle as an expert to testify about testing standards. He has never offered any report of any type. Therefore, Mr. O'Boyle should not be permitted to offer "testimony" about the fixture's compliance with the NEC, or the status of its UL certification.

Further, there is no foundation for Mr. O'Boyle's "expert" opinions. Mr. O'Boyle is not a representative of UL, and has not been employed by that organization for over 15 years. To suggest that he is currently familiar with current UL standards simply because he was an "engineering assistant" at UL sixteen years ago is absurd. He also should not be permitted to offer any opinions as to why the NEC set its standards for temperatures, since Mr. O'Boyle offers no evidence to suggest that he had any role in setting any of those standards.

---

[1] Given that the Defendant could have filed this motion at any point over the last 15 months, but chose to what until the eve of trial, it is reasonable to infer that the motion is more intended to undercut the credibility of the Plaintiff's expert than to actually preclude the Plaintiff's expert.

6

Finally, Mr. O'Boyle's status as an employee of the Defendant should cause the Court great concern as it considers the weight that should be attributed to Mr. O'Boyle's affidavit. To the extent that the Defendant suggests that Mr. Haynes cannot testify because he demonstrates a bias in his investigation, one cannot conceive of a more biased witness than a Defendant's employee.

### C. Machnicki's Affidavit Contains Previously Undisclosed Opinions and is Inadmissible

The Defendant's reliance on John Machnicki's affidavit also provides a basis for denial of the Defendant's motion. Mr. Machnicki is an employee with The Travelers, the Defendant's insurer. Additionally, although, the Defendant previously disclosed Mr. Machnicki as an expert, the Defendant did not disclose that Mr. Machnicki would be offering opinion concerning the use of the "proper test protocol," nor has he been disclosed as an expert to rebut Mr. Haynes' test methodology. Mr. Machnicki's disclosed opinions concerning Mr. Haynes' test results have until now focused solely on the interpretation of Mr. Haynes' results, rather than a criticism of the methodology used to obtain those results. Nothing his report suggests that Mr. Machnicki had any objection to Mr. Haynes' methodology.

Furthermore, Mr. Machnicki's affidavit is clearly biased in favor of his employer, the Defendant's insurer, in that he appears willing to accept certain of Mr. Haynes' test results as accurate while at the same time criticizing the methodology used to obtain those results. For example, he incorrectly states that Mr. Haynes' testing "proved that the fire could not have occurred" when the fixture was configured in a certain manner. (See Report of J. Machnicki, Pg. 10, attached as Exhibit D). Mr. Machnicki is clearly engaging in selective and biased criticism

7

when he is willing to accept certain test results as conclusive of the issue when it is favorable to his employer, but reject as invalid those test results that conflict with his employer's best interests.

Therefore, like the opinions set forth in Mr. O'Boyle's affidavit, the opinions set forth in Mr. Machnicki's recent affidavit should be rejected as previously undisclosed and biased.

### D. The Defendant Has Not Offered Sufficient Evidence to Preclude Testimony by Mr. Haynes

The Defendant argues that the testimony of Mr. Haynes should be precluded because he is not qualified to testify as an expert, his testimony is not based on accepted methodology in fire science; and his testing methodology is not reliable. However, none of these arguments are factually supported.

#### 1. Qualification

As the Defendant's counsel is well aware, Mr. Haynes is a Certified Fire and Explosive Investigator. His skill and knowledge in the field have resulted in his being qualified as an expert in many cases in state and federal courts. (See Plaintiff's designation of experts filed pursuant to the Court's order of October 3, 2003). This Court should reject the Defendant's use of dicta in Carroll v. Allstate, 262 Conn 433 (2003), as a basis for precluding testimony by Mr. Haynes, as the Plaintiff's arguments attack the credibility of Mr. Haynes', which goes to the weight of his testimony not its admissibility. Additionally, Carroll offers no evidence to undercut Mr. Haynes' credibility as a witness. As Justice Vertefeuille points out in the Court's opinion, Mr. Shadbegien, another investigator employed by Allstate "failed to provide Haynes

8

with the information necessary to complete a final and reasoned report." <u>Carroll</u>, 262 Conn. at 440. The Court also pointed out that the Haynes report was only preliminary. <u>Id</u>.

Much of the <u>Carroll</u> opinion points to Mr. Shadbegien's questioning of the plaintiff as offensive and that Mr. Shadbegien may have been influenced by the plaintiff's race. Yet, it is solely on the basis of Mr. Shadbegien's testimony, which the Court does not describe, that the Court concludes that "a jury <u>could</u> have <u>inferred</u> from Mr. Shadbegien's testimony that Haynes had a <u>tendency</u> to find arson." <u>Carroll</u>, 262 Conn. at 445 (emphasis added). The Court's opinion in <u>Carroll</u> certainly cannot be used to exclude the testimony of Mr. Haynes nor can it properly be used to impeach Mr. Haynes at trial because the opinion does not set forth any facts from which the finder of fact in <u>this</u> matter could reach a similar inference. Additionally, contrary to this Defendant's assertions, the Connecticut Supreme Court in no way indicates that it agrees with the inference that the jury could have made; rather, the Court merely indicates that the inference was reasonable. <u>Id.</u> at 444.

Additionally, the Plaintiff has failed to demonstrate that Mr. Haynes is not qualified to testify about violations of the NEC. The crux of the Defendant's argument is that Mr. Haynes is not aware that UL1598 is the "exclusive standard" approved for testing lighting under the NEC. In support of this assertion that UL1598 is the "exclusive standard," the Defendant merely offers the affidavit of Michael O'Boyle, the Defendant's employee. It would be profoundly unjust to allow the Defendant to preclude a Plaintiff's witness with the Defendant's own testimony.

9

### 2. **Methodology**

Regardless of whether Mr. Boyle's assertions are considered by the Court, they are irrelevant because Mr. Haynes was not testing to verify the fixture's UL certification; Mr. Haynes tested the fixture to determine whether the fixture could reach temperatures in excess of those permitted by the NEC. The result of this testing was that under certain circumstances likely to be encountered in normal installation, the fixture in question could reach temperatures in excess of Code standards.

Mr. Haynes' methodology was simply to test the fixture in the approximate configuration at the time of the fire, which is a generally accepted practice to determine whether a product acted in a defective manner. The fact that Mr. Haynes varied the configuration was due to the fact that there are questions as to exactly how the fixture may have been configured at the time of the fire. His testing was designed to capture these variable.

To the extent the Defendant will attempt to offer evidence as to UL standards at the time of trial, the Plaintiff will object on the grounds that compliance with such standards is not relevant in a strict product liability action, such as this. However, even if UL protocols were applicable in this case, the Defendant has not demonstrated that Mr. Haynes' methodology so dramatically deviated from the UL methodology as to make his tests invalid. Therefore, Mr. Haynes' use of protocols that differ from those used by an insurance industry organization does not provide a basis for precluding Mr. Haynes' testimony.

Furthermore, Mr. Haynes is the only expert witness identified by either party who has performed experiments on the subject fixture. Indeed, Mr. Machnicki indicated that he, at first,

10

MORRISON, MAHONEY & MILLER, LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

intended to conduct some experiments, but upon review of Mr. Haynes' results, decided not to conduct any testing. (Machnicki Depo. at 37, 117, 120-121, Attached as <u>Exhibit E</u>). He also does not recall having ever performed testing on similar fixture. (Machnicki Depo. at 37). Similarly, Mr. O'Boyle testified that Mr. Haynes' results did not surprise him. (O'Boyle Deposition at 34, Attached as <u>Exhibit F</u>). Additionally, Mr. MacDonald, another Defense expert employed by the Travelers, attended Mr. Haynes' deposition, and at that deposition inspected the equipment used during the experiments. Therefore, the Defendant cannot justifiably argue that Mr. Haynes results were not reproducible when the Defendant appears to have accepted the results, and then merely decided against conducting its own experiments.

Finally, the Defendant's argument that Mr. Haynes' testimony should be precluded because he has no photographs of his experiments cuts both ways. Under this logic, the Defendant should be precluded from offering any evidence of experiments done to test the light's compliance with UL standards, because as Mr. O'Boyle admitted in his deposition, there are no photographs or videographs of any of the testing that they have performed on the subject fixture. (O'Boyle Depo. at 74, Attached as <u>Exhibit F</u>.)

### III. <u>CONCLUSION</u>

Wherefore, the Defendant's Motion To Preclude Testimony of Thomas Haynes should be denied.

11

THE PLAINTIFF
SEACO INSURANCE COMPANY
a/s/o CORNER HOUSE ASSOCIATES, LLP

By _____
James L. Brawley -CT Federal Bar # 17321
Robert W. Cassot-CT Federal Bar #24094
Morrison, Mahoney & Miller, LLP
One Constitution Plaza, 10th Floor
Hartford, CT 06103
(860) 616-4441

12

MORRISON, MAHONEY & MILLER, LLP • COUNSELLORS AT LAW
ONE CONSTITUTION PLAZA • HARTFORD, CONNECTICUT 06103
(860) 616-4441 • JURIS NO. 404459

## CERTIFICATION

The undersigned hereby certifies that a copy of the foregoing was mailed, via hand delivery, to the following counsel of record this 1st day of April, 2004:

Frederick B. Tedford, Esquire
Tedford & Henry, LLP
750 Main Street, Suite 510
Hartford, CT 06106

James L. Brawley
Robert W. Cassot

13