**EXHIBIT A**

COPY

1

```
 1              UNITED STATES DISTRICT COURT

 2                 DISTRICT OF CONNECTICUT

 3   ATLANTIC MUTUAL INSURANCE CO.   :   CASE NO. 3:01CV197
     A/S/O A.G. EDWARDS & SONS, INC.     (AHN)
 4
     VS.
 5
     LIGHTOLIER, A DIVISION OF        :   JULY 15, 2003
 6   GENLYTE THOMAS GROUP, L.L.C.

 7   AND

 8   SAFECO INSURANCE COMPANY, A/S/O
     CORNER HOUSE ASSOCIATES, LLP
 9
     VS.
10
     LIGHTOLIER, A DIVISION OF
11   GENLYTE THOMAS GROUP, LLC

12

13          DEPOSITION OF JOHN P. MACHNICKI, CFEI

14                    MORNING SESSION

15

16   A P P E A R A N C E S:

17
             For the Plaintiff, Atlantic Mutual Insurance
18   Company:
                LAW OFFICES OF STUART G. BLACKBURN
19              Attorneys at Law
                Two Concorde Way
20              Windsor Locks, Connecticut 06096
                   BY:  JUSTIN J. DONNELLY, ESQUIRE
21
             For the Plaintiff, Seaco:
22              MORRISON, MAHONEY & MILLER, LLP
                Attorneys at Law
23              One Constitution Plaza
                Tenth Floor
24              Hartford, Connecticut 06103-1810
                   BY:  ROBERT WILLIAM CASSOT, ESQUIRE
25
```

1   Q   Let me stop you there. The difference in bulb
2   would change the temperature on the outside of the can?
3   A   Yes.
4   Q   All right. Go ahead. And then it would also
5   depend on the configuration of the joist space where it's
6   located?
7   A   Correct.
8   Q   Okay. And have you yourself run any tests in
9   connection with your report pertaining to determining the
10  area outside the can on any of these light fixtures?
11  A   By test you're referring to setting up a light
12  fixture in our lab and then measure temperatures and that
13  sort of thing?
14  Q   Yes.
15  A   No, I have not.
16  Q   Okay, have you performed any other kind of
17  test in connection with your report?
18  A   Other than laboratory tests? Are you
19  referring to cognitive testing?
20  Q   No, laboratory testing.
21  A   I have not with regards to this particular
22  case, no.
23  Q   Okay. Have you done laboratory testing in the
24  past of a recessed light fixture similar to this?
25  A   I don't recall.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

ATLANTIC MUTUAL INSURANCE CO.        :

a/s/o A.G. EDWARDS & SONS, INC.      :

      Plaintiff                       : CASE NO:3:01CV197(AHN)

V.                                   : JURY TRIAL DEMANDED

LIGHTOLIER, a division of GENYLE:

THOMAS GROUP, LLC.                   : JULY 15, 2003

      Defendants                      :

- - - - - - - - - - - - - - - - - - :

And                                  :

SEACO INSURANCE COMPANY a/s/o        :

CORNER HOUSE ASSOCIATES, LLP         :

      Plaintiff                       :

V.                                   :

LIGHTOLIER, a division of GENYLE:

THOMAS GROUP, LLC                    :

     CONTINUED DEPOSITION OF JOHN MACHNIKI

A P P E A R A N C E S:


For the Plaintiff Atlantic Mutual Insurance Co.:

    LAW OFFICES OF STUART G. BLACKBURN
    Two Concorde Way
    P.O. Box 608
    Windsor Locks, Connecticut  06096
    (860)292-1116
        BY:  JUSTIN J. DONNELLY, ESQUIRE

1  this from the file, and I marked this as an exhibit.  This is
2  the Plaintiff's, Seaco Insurance Company Disclosure of Expert
3  Witness and Report of Thomas Haynes.
4      A.  Okay.
5          (Plaintiff's Exhibit 12:  Marked for
6      Identification.
7  CONTINUED BY MR. CASSOT:
8      Q.  Before we do that, I want to be clear on a couple
9  other things.  You didn't do any experimentation of -- on
10 your own in this case?
11     A.  No.
12     Q.  Okay.  Are you aware of any experimentation that has
13 ever been performed by Lightolier with regard to the function
14 or operation of the light fixture, the type, the brand of
15 light fixture that is in question in this case?
16     A.  Only as it relates to UL required testing that they
17 do to get their certification.
18     Q.  What information are you aware of concerning the
19 testing that Lightolier has done with regards to getting the
20 UL certification?
21     A.  That they would place the light fixture in the setup
22 that UL requires for what I believe they call abnormal
23 temperature test.
24     Q.  How did you get the information?
25     A.  First of all, I am aware of the standard they

1  Christino deposition because it was clear to me Mr. Christino
2  did not understand how it operated or hadn't researched that
3  sufficiently.  And then at lunch I wanted to confirm with him
4  that the thermal protection device was the kind I was
5  thinking it was and so we discussed how it operated and that
6  sort of thing.
7      Q.  Okay.  And you mentioned that you had entertained
8  doing testing and then decided not to do that in light of the
9  testing done by Mr. Christino and Mr. Haynes.  What about the
10 testing done by Mr. Christino and Mr. Haynes that you decided
11 not to do testing?
12     A.  Well, one of the issues to explore was the
13 temperatures that you achieve on the fixture and to do some
14 demonstrative tests showing that these materials, whatever
15 the conversation, would never been susceptible to ignition,
16 but Mr. Christino, I think, came to his own conclusion with
17 respect to the deposition that the thermal imaging work and
18 testing pretty much shows it would never reach ignition
19 temperatures with those materials.  And at that point we
20 had -- at least I hadn't made a decision one way or the
21 other.  Always pass it to our attorney.
22          Anyway, then Mr. Haynes released his report and I
23 think he pointed to test number one as being the one that he
24 felt was representative of the conditions, and that certainly
25 didn't represent any issue with regard to the fire.  So at

1  that point I said, well, there's no sense --
2       Q.   Okay.
3       A.   -- in beating a dead horse.
4       Q.   Let me ask you this, Mr. Haynes did, in his testing,
5  and I'll show you his report which has been marked as Exhibit
6  12, if you need to refresh your recollection on this.  In at
7  least one test, specifically experiment number two, he was
8  able to reach 278 degrees Fahrenheit with the light fixture;
9  correct?
10      A.   Let me see.  Yes, he was.
11      Q.   Okay.  Do you have any doubts that the fact Mr.
12 Haynes was able to measure 278 degrees Fahrenheit?
13      A.   I would -- I would say that the temperature that's
14 measured there, I have to dispute that temperature.  I had
15 not reviewed the evaluation of the thermal coupling
16 conditions or the thermal couple or the equipment used to
17 measure, so I am taking that at face value when I answer the
18 question, but other than that, I believe that that
19 temperature that he achieved, that's the coupling temperature
20 achieved with the thermal couple during the test.
21      Q.   Okay.  How is that possible?
22      A.   How is what possible?
23      Q.   How is that possible for the light to reach 278
24 degrees?  Let me ask it this way.  If the thermal coupling's
25 working, once this light reaches a certain temperature it's

**EXHIBIT B**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
* * * * * * * * * * * *  *
ATLANTIC MUTUAL INSURANCE CO.         *
a/s/o A. G. EDWARDS & SONS, INC.      *
                                      * Civil Action
              -vs-                    *
                                      * No. 3:01CV197 AHN
LIGHTOLIER, a Division of             *
GENLYTE THOMAS GROUP, L.L.C.          *
                                      *
* * * * * * * * * * * *  *


* * * * * * * * * * * *  *
SEACO INSURANCE COMPANY               *
a/s/o CORNER HOUSE ASSOCIATES, LLP    *
                                      * Civil Action
              -vs-                    *
                                      * No. 3:01CV2403 AHN
LIGHTOLIER, a Division of             *
GENLYTE THOMAS GROUP, L.L.C.          *
                                      *
* * * * * * * * * * * *  *
```

APPEARANCES:   Robert W. Cassot, Esquire
               OFFICES MORRISON, MAHONEY & MILLER, LLP
               One Constitution Plaza - 10th Floor
               Hartford, Connecticut 06103;
               Representing Seaco Insurance Company

               Frederick B. Tedford, Esquire
               OFFICES OF TEDFORD & HENRY, LLP
               750 Main Street - Suite 510
               Hartford, Connecticut 06103;
               Representing Lightolier.


* * * * * *

Goudreau & Grossi Court Reporting Service, Inc.
63 Winthrop Street
Taunton, Massachusetts 02780
(508) 823-4659

Barbara St. Jean, RPR, CSR No. 127693

```
 1          DEPOSITION of MICHAEL O'BOYLE, a witness of
 2   lawful age, taken on behalf of the Plaintiff in the
 3   above-entitled cause wherein Seaco Insurance is the
 4   Plaintiff and Lightolier is the Defendant, pending
 5   before the United States District Court for the
 6   District of Connecticut, pursuant to Notice and
 7   agreement of parties before Barbara St. Jean, CSR, RPR,
 8   a Notary Public in and for the Commonwealth of
 9   Massachusetts, at the law offices of Morrison, Mahoney &
10   Miller, ten North Main Street, Fall River,
11   Massachusetts, on Monday, the 3rd day of November,
12   2003, at 3:00 o'clock p.m.
13
14
15
16
17
18
19
20
21
22
23
24
```

Barbara St. Jean, RPR, CSR No. 127693

1      These are other tests.
2  Q   Okay.  Who performs this test?
3  A   Well, this says it was conducted at the
4      manufacturer's facility.
5  Q   Okay.
6  A   And at that time, which would have been 1978 looking
7      at the date, that would have been a test that UL
8      would have come to witness.
9  Q   You weren't -- where were you in 1978?
10 A   High school.
11              MR. CASSOT:  Okay.  Okay.  Why don't
12     you take -- let's mark this.  All right?
13              MR. TEDFORD:  Fine.
14              As Exhibit 1?
15              MR. CASSOT:  One to Mr. O'Boyle's
16     deposition.
17              MR. TEDFORD:  So it's test number
18     what?
19              MR. CASSOT:  Thirteen.
20              THE WITNESS:  At the time, record
21     Number 13.
22              (Whereupon the above-described
                 document was then marked as
23               Plaintiff's Exhibit No. 1)
24 Q   All right.  What's been marked as Exhibit 1 to your