IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SEACO INSURANCE COMPANY a/s/o : <br> CORNER HOUSE ASSOCIATES, LLP, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> LIGHTOLIER, a division of GENLYTE : <br> THOMAS GROUP, LLC, : <br> : <br> Defendant. : | <br><br><br><br><br>CASE NO. 3:01 CV 197 (AHN)<br><br><br><br><br>APRIL 2, 2004 |

**DEFENDANT'S REPLY TO OBJECTION TO MOTION TO
PRECLUDE EXPERT TESTIMONY OF THOMAS HAYNES**

The defendant, Lightolier, a division of Genlyte Thomas Group, LLC ("Lightolier"), by and through its attorneys, Tedford & Henry, LLP, hereby submits the following Reply to the plaintiff's Objection to defendant's Motion to Preclude Expert Testimony of Thomas Haynes, and states as follows.

**INTRODUCTION**

The plaintiff's Objection to the defendant's Motion to Preclude exemplifies the semantics, misdirection, and irrelevance which has been the hallmark of the plaintiff's case since the inception of this lawsuit. Through the proposed testimony of Thomas Haynes, the plaintiff utilizes circular reasoning which has, as its foundation, assumptions and speculation which cannot form a proper basis for a product liability claim against Lightolier. Moreover, the plaintiff's case is fatally flawed in that no analysis as to causation can be made at trial; inferences as to that key element of a products liability case, as the plaintiff suggests is appropriate, cannot be made. Finally, and perhaps most importantly, the plaintiff now attempts to alter its theory of the case to suggest that an unproven and unconfirmed scientific theory <u>could</u> <u>have</u> caused a

hypothetical fire, while trying to sidestep the reality that the factual foundation necessary for that theory to be operable <u>does</u> <u>not</u> <u>exist</u> in this case. For these reasons, the testimony of Thomas Haynes must be precluded at trial.

## **PLAINTIFF'S THEORY OF THE CASE**

To understand the plaintiff's circular reasoning, a clear and concise theory of liability must be reviewed. Based upon the plaintiff's own analysis in its Objection, the defendant believes the plaintiff's theory of liability to be as follows:

- the origin of the fire is adjacent to Lightolier's light fixture, with said origin to be established through the testimony of Fire Marshal Vincent DiPietro;

- the light fixture was the only possible source of ignition in vicinity of the fixture, to be established through the testimony of DiPietro;

- the light fixture was capable of reaching temperatures in excess of those permitted by the National Electric Code;

- the light fixture was capable of reaching temperatures sufficient to cause pyrolysis of combustibles; and

- pyrolysis of combustibles occurred, and ignition resulted.

The very real problem with this analysis is two-fold. First, the testing conducted by Mr. Haynes himself (which, as noted in the defendant's Motion, did not conform to Underwriters Laboratory testing requirements), revealed that the light fixture in question containing the wattage light bulb which <u>both</u> Fire Marshal DiPietro and Thomas Haynes believe was present in the fixture at the time of the fire <u>could</u> <u>not</u> <u>have</u> reached sufficient temperatures to cause the ignition of combustibles. (<u>See</u> Exhibit E of Defendant's Motion to Preclude). Second, setting

2

aside the fact that the plaintiff clearly misunderstands the scientific distinction between pyrolysis and pyrophoric carbon causing spontaneous ignition, the latter concept: (1) is not applicable to the facts accepted in this case, and (2) is widely criticized as being an unproven hypothesis, as noted by the United States Court of Appeals for the Tenth Circuit.[1]

<b><u>DEFENDANT'S REPLY</u></b>

**<u>Problem Number 1:</u>**

The first critical flaw in the plaintiff's primary argument and, thus, Haynes' testimony, is that that the subject light fixture is not a <u>competent</u> ignition source for the available combustibles. According to accepted fire science, a fire occurs when one brings together a competent ignition source with a competent fuel. <u>See</u> *NFPA 921: Guide for Fire and Explosion Investigations*, Chapter 16 (2001 Edition)(Exhibit A). If either element is lacking, then a fire <u>will</u> <u>not</u> occur.

In the present matter, Fire Marshal Vincent DiPietro identified an area of origin for the subject fire; that area of origin included the area where the subject light fixture was located. (<u>See</u> DiPietro Affidavit, ¶ 5)(Exhibit B). Because there were no other potential ignition sources in that area of origin, DiPietro, through a process of elimination, concluded that the subject light fixture was the ignition source for the fire. (<u>See</u> Exhibit B, DiPietro Affidavit, ¶ 6). However, what DiPietro failed to determine as part of his investigation was whether the subject light fixture was capable, under conditions then and there existing, of igniting the nearby combustibles. According to accepted fire science, if the light fixture in its condition at the time of the fire was incapable of igniting combustibles, then the light fixture could not have been the ignition source, and DiPietro had to have been wrong about the area of origin. Therefore, an

---

[1]  Moreover, it is a well-recognized aspect of the "scientific method" that hypotheses must be tested and proven before they can serve as a basis for scientific opinions. <u>See</u> *NFPA 921: Guide For Fire and Explosion Investigations,* Chapter 2 – Basic Methodology (2001 Edition)(Exhibit C).

3

analysis of whether the light fixture could be a competent ignition source for the available combustibles is highly relevant.

Fortunately for the defendant, Thomas Haynes undertook that exact analysis by performing experiments. In Experiment Number 1, Haynes utilized the wattage light bulb which both he and DiPietro believe was in the subject light fixture at the time of the fire – <u>a 65-watt PAR</u> (heat reflector-type) light bulb. Bearing in mind that Haynes' applied the temperature threshold allowed by Underwriters' Laboratory (although not the UL testing methodology, as discussed in defendant's Motion), namely, 194ºF, Haynes was not able to generate temperatures in excess of 191ºF. Thus, Haynes' <u>own</u> <u>test</u> demonstrates that the subject light fixture containing a 65-watt PAR bulb, which was the believed set-up at the time of the fire, <u>cannot</u> ignite any known combustibles in the area. Therefore, the subject light fixture <u>was</u> <u>not</u> <u>a</u> <u>competent</u> <u>ignition</u> <u>source</u> <u>for</u> <u>this</u> <u>fire</u>.[2] Accordingly, there is no factual basis for Haynes' opinions that the subject light fixture was defective.

**Problem Number 2:**

Not being able to achieve 194ºF, the UL safe-temperature threshold, through Experiment No.1 (the only experiment which utilized the appropriate equipment), Haynes embarked on an effort to obtain test results which support a theory of ignition through a hypothesis based upon the ignition of pyrophoric carbon. This effort, embodied in Haynes' Experiment No. 2, is overwhelmingly irrelevant to this case.

---

[2] Upon being presented with this test data, Fire Marshal DiPietro stated that if he had known at the time of his investigation that the subject light fixture was not a competent ignition source, then he would have started over with his investigation. (<u>See</u> Exhibit B, DiPietro Affidavit, ¶¶ 8-9). In sum, if one does not have a competent ignition source in a proposed area of origin, then one has misidentified the area of origin.

4

More particularly, while Haynes did achieve temperatures in excess of the Underwriters Laboratory limits of 191ºF with Experiment No. 2,[3] that experiment utilized a 60-watt "normal" light bulb rather than the type of bulb in place at the time of the fire. The plaintiff wishes this Court to make the assumption that because a lower wattage bulb was used, and because temperatures in excess of the UL threshold were reached, then the subject light bulb was capable of the same. However, the subject light bulb was a PAR heat-reflecting bulb; the Experiment No. 2 bulb was a "normal" light bulb. The key distinction? A "normal" light bulb will, by design, exude hotter temperatures in <u>all</u> directions than a PAR bulb. That fact is why it is crucial that a PAR bulb be used with the subject fixture, which both DiPietro and Haynes agree was used at the time of the fire. In sum, Experiment No. 2 provides <u>no</u> <u>relevant</u> test data to this case, and complicates this matter by provided an irrelevant foundation for a speculative argument, discussed hereinbelow.

**Problem Number 3:**

Haynes moves on with his hypothesis, and opines that <u>if</u> a 60-watt "normal" bulb is used in the subject light fixture (which he believes did not occur), then "pyrolysis" of wood[4] can occur when the temperature of the light fixture reaches 250ºF. The defendant does not dispute that assertion, nor the fact that "pyrolysis" is a well-recognized phenomenon constituting nothing more than a chemical change to wood. Where the plaintiff's analysis is fundamentally flawed, however, is in the distinction between (1) pyrolysis; and (2) pyrophoric carbon causing self-ignition. In sum, not only has the plaintiff embarked on a tangent concerning pyrolysis that is

---

[3] Again, despite Haynes acknowledging the appropriateness of UL testing thresholds, Haynes <u>failed</u> to utilize UL testing methodology in conducting his tests. Therefore, the Haynes tests themselves are flawed.

[4] As paper is a product of wood, the same analysis applies to the proposed paper fuel in the proposed area of origin.

scientifically flawed, but that tangent is based on a speculative and conjectured proposition, namely, the presence in the subject fixture of a 60-watt "normal" light bulb.

   A.  *Distinction Between Pyrolysis and Pyrophoric Heating:*

In order to fully understand the fallacy in the plaintiff's arguments, this Court must have a general understanding of the difference between pyrolysis and the theoretical results of pyrophoric heating. As noted by James MacDonald in his deposition testimony, pyrolysis is an accepted phenomenon in which wood changes its chemical make-up. (See MacDonald Deposition, at Pages 109-112). As an example, consider a newspaper left out in the sun for a period of time. That newspaper will brown; that browning is pyrolysis, and it is a necessary first step in achieving a fire. However, whether that pyrolysis can result in a lowering of the threshold ignition temperature[5] for the newspaper (through long-term low temperature heating by the sun) is an entirely different issue – an issue which has not been resolved scientifically, and a concept which the Tenth Circuit Court of Appeals considers suspect. See Truck Insurance Exchange v. Magnetek, Incorporated, Docket Number 03-1026 (February 25, 2004)(Exhibit D).

More particularly, the plaintiff opines in its Objection at Page 5 that "pyrolysis changes the composition of wood so that the ignition point of the pyrolyzed wood is significantly lower than that of wood," and it cites to the Babrauskus Article (plaintiff's Exhibit B) as a basis for that idea. However, even Dr. Babrauskus acknowledges in his own article the difficulties with the theory:

> [t]he chemistry, physics, and thermostructural behavior involved in producing spontaneous combustion due to long-term low-temperature heating of wood are clearly very complicated, interrelated phenomena. It may be many decades before a theory is evolved that can give useful numerical results. However, expanded guidance to investigators could be obtained in a few years by conducting a series of well-designed experiments. . . . A period of 3 years might

---

[5] It is that lowering of the threshold of the ignition temperature of paper which Haynes must have in order for his theory on the inapplicable 60-watt bulb test, Experiment No. 2, to be viable.

  be a suitable time during which the experiment should be in place and left to run its course.

Babrauskas, Vytenis, Ph.D., "'Pyrophoric Carbon' and Long-term, Low-temperature Ignition of Wood." Babrauskas recognizes that more testing is necessary in order to confirm the theory of long-term, low-temperature ignition of wood, testing never performed by Haynes in this case to support his theories. Therefore, while <u>pyrolysis</u> is a well-recognized and accepted concept, the Babrauskas theory expanding that concept cannot be used as a basis for testimony in this case because it is not generally accepted as fact in the scientific community, not even by Babrauskas himself as is evidenced by the title of his article "Pyrophoric Carbon . . . **The Jury is Still Out**," <u>Fire and Arson Investigator</u>, 51:2, 12-14 (Jan. 2001)(emphasis added)(Exhibit E), the article upon which the article listed as plaintiff's Exhibit B is based. Therefore, the standards in <u>Daubert</u> cannot be met by the plaintiff in this case with respect to Haynes.

  *B. Tenth Circuit Court of Appeals:*

  In addition, the United States Court of Appeals for the Tenth Circuit considered these exact issues recently in the case of <u>Truck Insurance Exchange v. Magnetek, Incorporated</u>, Docket No. 03-1026 (February 25, 2004)(copy attached). In <u>Truck</u>, the Tenth Circuit was presented with a factual background very similar to that in this case – a fire occurred, and a resultant subrogation action was filed by the plaintiff. <u>Truck</u>, at 2. The plaintiff claimed that a fluorescent light ballast manufactured by the defendant caused the fire, and sought to recover damages paid to its insured. <u>Id.</u> Three separate investigators opined that the light fixture started the fire because there were no other apparent heat sources in the area of the fire's origin; knowing that the fixture contained a ballast which is designed to control the amount of heat the fixture can generate, they then focused on the ballast as the likely cause of the fire. <u>Id.</u>

The plaintiff's experts conducted a series of simulations on exemplars to obtain more data. A peak temperature and a stable temperature were arrived at, with both being significantly below the normal wood ignition temperature, noted by the court as being 400ºF. Id. at 3. However, the experts proposed that the level of overheating was sufficient to cause the fire through pyrolysis. Id. at 3. The defendant, disagreeing with that position, moved to exclude those opinions as having no sound scientific basis. Id.

In reviewing the issue, the Tenth Circuit took note of the fact that the plaintiff introduced publications to support the pyrolysis theory. Id. at 6. However, the Tenth Court further noted that all three publications "cast doubt on the general scientific acceptance, the methodology, and the adequacy of the experimentation underlying pyrolysis at this time." Id. at 6. One of the articles, surprisingly enough, was Dr. Babrauskas' "The Jury is Still Out" article, an article upon which plaintiff's Exhibit B is based. The court noted that the Babrauskas' article "is even more dubious as a foundation for pyrolysis." Id. at 6. The court quoted Babrausakas' article as follows: "the phenomenon of long-term, low-temperature ignition of wood has neither been proven or successfully disproven at this time." Id. The Tenth Court held, therefore, that "given the cautionary statements about the reliability and foundation of pyrolysis . . . we cannot conclude that the district court abused its discretion in excluding [expert] opinion testimony [on pyrolysis]." Id. at 7. In sum, the Tenth Circuit, in its "gatekeeper" role, disallowed the theory espoused in this case by the plaintiff as it lacked scientific reliability. This Court should take guidance from the Tenth Circuit on that issue, and disallow Haynes' testimony.

**Problem Numbers 4, 5, 6, & 7:**

Although the defendant contends that the above-noted problems with the plaintiff's arguments suffice to exclude Thomas Haynes from testifying, the defendant makes the following observations as well:

- Haynes was not disclosed as an expert on causation, and the jury cannot, as a matter of law, "infer" as the plaintiff proposes that a proposed defect was the cause of a fire. A product may be defective, and not cause a fire. Conversely, a product may cause a fire, and not be defective. That is precisely why an expert must tie in an alleged defect to the cause of the fire. Without that causation testimony, which the plaintiff does not have in this case, an essential element of a products liability claim is lacking.

- Haynes failed to utilize accepted testing methodologies and standards from Underwriters Laboratory for the tests he did conduct.

- Michael O'Boyle need not be disclosed as an expert (although he certainly qualifies as one) to testify on a <u>Daubert</u> challenge. Mr. O'Boyle's Affidavit was submitted in response to Haynes' methodology and testing. There is no requirement that Mr. O'Boyle be disclosed as an expert when his testimony is used for the limited purpose of rebuttal.

- The plaintiff's arguments as to John Machnicki go to the weight of his proposed testimony, not the admissibility.

## **CONCLUSION**

Although the plaintiff attempts to rehabilitate Mr. Haynes to afford him the opportunity to testify, the plaintiff fails to meet almost every facet of <u>Daubert</u> with respect to Mr. Haynes' proposed testimony. The following constitutes a summary of the arguments:

- Haynes acknowledges that the subject light fixture containing the 65-watt bulb could not cause this fire;

- Haynes constructs a faulty test, using no accepted methodology and unrelated data (i.e., a "normal" 60-watt bulb), to achieve temperatures in excess of UL limits;

- Haynes accepts as scientific fact the <u>theories</u> espoused by Babrauskas on pyrophoric carbon and long-term, low-temperature ignition of wood, contrary to Babrauskas' own recommendations and the opinion of the Tenth Circuit Court of Appeals; and

- Based upon (1) baseless use of an irrelevant bulb; (2) speculation on ignition temperatures; and (3) speculation as to the viability (absent testing) of Babrauskas' theories, Haynes arrives at a potential result favorable to the plaintiff.

Clearly, this Court cannot allow the circular reasoning suggested by the plaintiff, and the unreliable opinions of Haynes', to support the continued prosecution of this case. As the proposed testimony fails to meet the most basic standards for expert testimony, Haynes' testimony must be precluded, and the defendant's Motion to Preclude must be granted.

Dated: April 2, 2004

Respectfully submitted,

LIGHTOLIER, a division of
GENLYTE THOMAS GROUP, L.L.C.,

By: _____
Frederick B. Tedford (ct05335)
TEDFORD & HENRY, LLP
750 Main Street
Hartford, CT  06103
Phone (860) 293-1200
Fax (860) 293-0685
ftedford@tedfordhenry.com

Attorneys for the Defendant

## CERTIFICATION

I hereby certify that a copy of the foregoing was served, via U.S. Mails, proper postage affixed, on this 2nd day of April, 2004, to all counsel and *pro se* parties of record addressed to the following:

Robert W. Cassot, Esq.
Morrison, Mahoney & Miller, LLP
One Constitution Plaza, 10th Floor
Hartford, CT  06103

_____
Frederick B. Tedford